# In the United States District Court
## for the Southern District of Georgia
## Brunswick Division

TERRY L. COOK,

     Plaintiff,

     v.

GLYNN-BRUNSWICK HOSPITAL
AUTHORITY, d/b/a SOUTHEAST
GEORGIA HEALTH SYSTEM,

     Defendant.

CV 213-152

## ORDER

Plaintiff Terry L. Cook claims that he was fired from his job as a patient transporter at Defendant Southeast Georgia Health System's hospital ("SGHS") because of his race (African-American) and age (54). SGHS counters that Plaintiff was actually fired because of his long and abysmal history of various workplace infractions, the final straw being the "whirlwind" transport Plaintiff allegedly subjected an ill patient to when he rushed her from her hospital room to the X-ray facilities. SGHS has filed a motion for summary judgment. Dkt. No. 29. Given that there is no material question of fact as to any of Plaintiff's discrimination and hostile work environment claims, SGHS is entitled to summary judgment on all

AO 72A
(Rev. 8/82)

claims as a matter of law.  Therefore, SGHS' motion for summary judgment is **GRANTED**.

## PRELIMINARY CONSIDERATIONS

Before outlining the factual background, the Court will first address Plaintiff's Objections to SGHS' Local Rule 56.1 Statement of Material Facts.  See Dkt. No. 30 ("Def.'s 56.1 Statement"); Dkt. No. 42-1 ("Pl.'s 56.1 Statement").

Of the facts Plaintiff challenges, most utilize one of a few repeated objections.  First, Plaintiff responds to several of the "disputed" facts as "Neither admitted nor denied,"[1] "Denied as stated,"[2] or simply "Denied."[3]  Because these facts were not opposed with citations to the record or an explanation as to why they should be disregarded, they are considered undisputed for the purposes of this motion.  See Fed. R. Civ. P. 56(e)(2).  Second, Plaintiff objects to some facts and purports to cite the record for support by stating "See the Plaintiff's Affidavit and deposition testimony," or by making some similar reference to the record.[4]  Plaintiff's deposition testimony spans some 300 pages.  See Dkt. No. 32.  If Plaintiff wishes to rely on deposition testimony, or any other evidentiary material in the record, to dispute SGHS' proffered facts, he must do so by

---

[1] See Pl.'s 56.1 Statement, ¶¶ 1, 44, 64–68, 116–119, 123–127, 134, 137–139, 141, 143–145, 147, 150–153, 162, 163, 167, 168.
[2] See Pl.'s 56.1 Statement, ¶¶ 14, 23, 159, 166, 170.
[3] See Pl.'s 56.1 Statement, ¶¶ 69, 146, 164.
[4] See Pl.'s 56.1 Statement, ¶¶ 58, 62, 70, 105, 106, 130, 131.

"citing to *particular parts* of materials in the record." Fed. R. Civ. P. 56(c)(1)(A) (emphasis added). The burden of controverting SGHS' facts rests on Plaintiff, not the Court. These facts, then, are uncontroverted and deemed admitted. Third, Plaintiff objects to a number of SGHS' proffered facts because "the statement purports to set forth multiple statements of fact, some of which are true and some of which may not be true."[5] The Court concludes that this objection, on its own, is not a valid basis for striking SGHS' statements of fact. Thus, the two objections resting solely on this assertion (Undisputed Facts 136 and 160) are deemed admitted, and the remainder will stand or fall pursuant to the validity of Plaintiff's evidentiary objections.

The balance of Plaintiff's objections consists almost entirely of evidentiary challenges. Plaintiff objects to a number of SGHS' undisputed facts concerning Plaintiff's disciplinary history as "not relevant."[6] These include Plaintiff's past performance evaluations and appraisals, "corrective actions," memoranda regarding a patient complaint, a "Final Written Warning," documentation of verbal warnings, and a complaint the hospital received about Plaintiff after he was terminated. Evidence is relevant if "(a) it has any tendency to

---

[5] See Pl.'s 56.1 Statement, ¶¶ 24-28, 92, 94, 98, 100, 102, 108, 110, 112-115, 120-122, 128, 136, 142, 148-149, 155, 160.
[6] Pl.'s 56.1 Statement, ¶¶ 24-28, 32-34, 36, 37, 42, 43, 52, 54, 81, 83, 86, 92-94, 156.

make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Plaintiff's disciplinary record and performance evaluations are plainly relevant because they may show that SGHS had a nondiscriminatory basis to terminate Plaintiff. Plaintiff's objection is sustained as to one statement of fact (¶ 156) alleging that SGHS received a complaint about Plaintiff *after* he was terminated—that fact is not relevant to establishing the absence of discriminatory intent in SGHS' decision-making process, and will be disregarded for summary judgment purposes. The rest of Plaintiff's relevance objections, though, are overruled.

Plaintiff also asserts dozens of hearsay objections.[7] Most of these objections concern the written contents of Plaintiff's disciplinary records and performance evaluations, many of which he admits to signing. Some objections are to documents re-stating patient complaints against Plaintiff, documents discussing other hospital employees' disciplinary records, and hospital managers' notes taken during meetings with hospital leadership. Pertinently, Plaintiff also objects to deposition and declaration testimony regarding the hospital management's decision to terminate Plaintiff.

---

[7] Pl.'s 56.1 Statement, ¶¶ 32–34, 36, 37, 42, 43, 46, 49–51, 71–80, 82, 87–92, 94, 96–104, 108–115, 120–122, 128, 129, 132, 133, 135, 140, 142, 148, 155.

Hearsay is any statement that "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801. Records of a regularly conducted business activity are excepted from the hearsay rule if certain requirements are met. See Fed. R. Evid. 803(6). Of all of the disciplinary and employment records SGHS produced, SGHS argues that many are admissible because they are not offered for the truth of the matter asserted (i.e., that Plaintiff actually committed the infraction described therein), but rather are offered to explain the conduct of SGHS' management team regarding its decision to terminate Plaintiff. Furthermore, SGHS notes that Rule of Evidence 803(6) provides a pathway for SGHS to make this evidence admissible at trial. The Court agrees. All of Plaintiff's hearsay objections are overruled.

Aside from the lone objection which was sustained (¶ 156), the only objections or challenges the Court does not deem admitted at this time are ¶¶ 2, 63, 121, and 149. Plaintiff's objections to these facts are unique and will be more appropriately addressed later in this Order, to the extent the Court relies on them in considering SGHS' Motion for Summary Judgment. All other facts in SGHS' 56.1 Statement are deemed undisputed. See Fed. R. Civ. P. 56(e)(2). For purposes of

AO 72A
(Rev. 8/82)

summary judgment, these facts will be considered in a light most favorable to Plaintiff.

## FACTUAL BACKGROUND

SGHS is headquartered in Brunswick, Georgia. Dkt. No. 40 ("Thomas Decl."), ¶ 1. Plaintiff Terry Cook worked for SGHS for three separate periods from August 20, 1976, until his termination on February 8, 2012. Dkt. No. 32 ("Pl. Dep."), 25:9-17; Dkt. No. 42-2 ("Pl. Aff."), ¶ 1. After resigning from his first two posts at SGHS, Plaintiff was rehired at SGHS on May 10, 1992, to work as a transporter in the Surgery Department. Pl. Dep., 58:1-59:25. It was during this final stint when most of the relevant events in this case occurred.

### *Plaintiff's Employment Evaluations*

In 1993 and each of the following years, Plaintiff received an employee evaluation. Some of these evaluations were favorable, particularly during the early years. For example, between 1993 and 1998, the evaluations gave Plaintiff either an above average (Def. Ex. 17) or average (Def. Ex. 19) rating, or showed that he usually met or exceeded the expectations for his various job responsibilities (Def. Exs. 20, 21, 23, 25). While the metrics and terminology in the evaluations changed over the

years, Plaintiff continued to receive generally favorable
evaluations throughout his third tenure at SGHS.[8]

These evaluations also noted areas in which Plaintiff could
improve, and included comments such as "Is frequently late"
(Def. Ex. 17), "Needs to correct his tardiness and refrain from
anything around the patients that is not associated with their
well-being" (Def. Ex. 21), "Too many tardies!" (Def. Ex. 23),
and "Work on punctuality" (Def. Ex. 48). Some of the later
evaluations began to note that Plaintiff did not always work
well with others, particularly in that he "doesn't always treat
others fairly. He tends to be moody, and argumentative with
others in the department" (Def. Ex. 53); that he is
"argumentative and attitudinal" (Def. Ex. 55); that he needs
improvement in the area of "Interacts with team members to help
promote good working relationships" (Def. Ex. 56); and that
Plaintiff "still marches to the beat of his own drum" and is
"occasionally direct on important issues and that can be
construed as not being courteous" (Def. Ex. 51).

**Another Employee's Offensive Comments**

The record shows that one of Plaintiff's coworkers, Fran
Trahan ("Trahan"), at one point made offensive comments to

---

[8] See Def. Exs. 30 (March 1999, "Competent"), 31 (May 1999, "Commendable"), 33
(December 1999, "Commendable"), 35 (December 2000, "Competent"), 38 (December
2001, "Commendable"). From 2003 to 2011, Plaintiff received overall
"quality" performance ratings. See Def. Exs. 40, 42, 46, 48, 50, 53, 55, 61,
64.

Plaintiff. She referred to Plaintiff, and other transporters, as "you people" and told them to "kiss her rear end" and "get the hell out of here." Pl. Dep., 293:21-23, 294:12, 296:25-297:12. Plaintiff admits that Trahan was eventually disciplined for her comments. Pl. Dep., 296:7-10. Trahan was counseled in August 2010 for her abusive comments, and was later issued a written warning in December, 2010.[9] Thomas Decl., ¶ 12. Under the written warning, Trahan was placed on a 90-day Performance Improvement Plan, which Trahan completed. Id. Stanford "Tripp" Stephens ("Stephens"), who became Trahan's manager in 2012, is not aware of any complaints regarding Trahan since he became manager. Dkt. No. 36 ("Stephens Dep."), 7:12-9:4, 21:9-17.

**Plaintiff's Disciplinary History**

In addition to Plaintiff's previous employment evaluations, the record includes several documents—some signed by Plaintiff, others not—indicating various types of formal discipline for misconduct. Between 1985 and 2009, Plaintiff received twenty-five such write-ups. The majority of these write-ups[10] concern

---

[9] Plaintiff objects to any evidence of Trahan's disciplinary record as irrelevant. Pl.'s 56.1 Statement, ¶ 63. Trahan's disciplinary record is relevant insofar as Plaintiff relies on her statements to support his hostile work environment claim.

[10] The write-ups are variously styled as "Verbal Warning Notice," "Written Reprimand," "Employee Warning Report," "Verbal Counseling," "Corrective Actions," "Written Warning," "Final Written Warning," "Private Verbal Warning," and "Corrective Action Plan." These documents also include memoranda, emails, handwritten notes, and letters related to specific episodes of misconduct. See Def. Exs. 6-11, 81-89, 91-99, 101-106.

excessive tardiness or absences.[11] Others involve issues of patient safety[12] or rudeness towards patients and their families.[13] And others address verbally abusive conduct towards hospital staff, "confrontations" with co-workers, and insubordination.[14] SGHS' exhibits also include a memorandum discussing an investigation into a sexual harassment complaint against Plaintiff, which resulted in Plaintiff being told not to communicate with the complainant or enter her work area except for work-related reasons.[15]

After accumulating several warnings for these types of misconduct, Plaintiff was issued a "Final Written Warning" on May 26, 2011, by his supervisor at that time, Robert Eddy ("Eddy"). Pl. Dep., 214:7-215:16; Def. Ex. 105. Plaintiff acknowledges that he signed the warning. Id. The Final Written Warning states that an investigation had been made into

---

[11] See Def. Exs. 6, 8-11, 81-83, 85, 91, 94-96, 102.
[12] See Def. Exs. 7, 84, 92, 93, 100, 101, 104 (addressing four separate complaints against Plaintiff).
[13] See Def. Exs. 86. In addition to the hearsay objection dismissed above, Plaintiff also objects to this documentation of a patient's complaint because "no identification is given as to the identity of the patient." Pl.'s 56.1 Statement, ¶ 82. Plaintiff presents no legal arguments as to why this failure to identify the patient should render the complaint and its contents controverted or inadmissible for consideration on SGHS' Motion for Summary Judgment. The Court notes that SGHS redacted the patient's identification to comply with the Health Insurance Portability and Accountability Act ("HIPAA") requirements. Dkt. No. 45, p. 2, n. 6. More importantly, insofar as Plaintiff's objection to the unidentified complainant ties into his hearsay objection, that objection fails for the reasons stated at the outset of this order: SGHS does not offer this patient complaint (and others) for the truth of the matter asserted, but rather to establish a non-discriminatory basis for SGHS' management's employment decisions.
[14] See Def. Exs. 97-99.
[15] Def. Ex. 109.

Plaintiff's conduct. Def. Ex. 105. Addressing Plaintiff, the warning goes on to state that the investigation determined:

> that your behaviors are inappropriate and very detrimental to team cooperation. You have used abusive language, profanity, and divisive behavior towards our Dispatchers, which negatively impacted the entire Transport team. Your poor behavior, inappropriate comments and attitude, [sic] concerning how transfer requests are processed, have become extremely disruptive. You are viewed, by the entire team, as the instigator and "ring leader", as you constantly take your complaints and adverse comments to others to get them "on your side". . . . Additionally, a review of your time and Attendance shows that you have been tardy 47 times in the most recent 12 months.

Id. Plaintiff was further told that he must comply with "all departmental protocols" and that he should "demonstrate and abide by the Service Excellence standards with [his] teammates, colleagues and customers." Id. The Final Written Warning includes a "Corrective Action Plan" which states, in part, "You understand that additional performance problems will lead to progressive corrective action, up to and including termination of employment." Id.

On May 31, 2011, Plaintiff signed a letter addressed to SGHS Human Resources Representative Charlotte Lyda regarding his Final Written Warning.[16] Def. Ex. 106; Pl. Dep., 218:20-220:25. In the letter, Plaintiff states "I Terry Cook am filing a grievance concerning the final write-up I received this month

---

[16] Plaintiff acknowledges that he signed the letter. Pl. Dep., 218:25-219:2. However, he says someone else prepared it for him, although he cannot remember who. Id. at 219:5-12. In any event, Plaintiff never denies assenting to the contents of the letter.

issued by my supervisor Bob Eddy. . . . I feel that I should not have received a final write-up. If anything I should have received separate warnings for each of the incidents." Def. Ex. 106. Plaintiff then goes on to explain or challenge the various accusations against him in the Final Written Warning. Id. Plaintiff concludes by stating:

> The details that were listed previously in this letter
> appeared in the Final write-up notice that was
> presented to me. I feel that these details were used
> improperly in order to salvage [sic] my reputation.
> They were unrelated to each other, and [therefore]
> they should not have been able to be used as a reason
> for a final written warning. In conclusion I feel that
> a reasonable resolution should be issued to me.

Id. Plaintiff's letter does not assert any allegations of discrimination based on age or race. Pl. Dep., 222:1-6; Def. Ex. 106.

On June 27, 2011, Eddy responded to Plaintiff's letter in a memorandum, stating, "After careful consideration, I have decided to uphold the 'final written warning' corrective action status." Def. Ex. 109; Pl. Dep., 227:17-228:16. Eddy reminded Plaintiff that Plaintiff was the subject of an investigation into the allegation of a hostile work environment in the Transport Department. Id. The memo also states that "The written warning will remain in [e]ffect for twelve (12) months." Id.

Angelynn Thomas ("Thomas"), the Human Resources Generalist at SGHS, stated that "A termination action is appropriate when there is a Final Written Warning in [an] employee's file within the preceding 12-month period. The offense that precipitates the termination does not have to be for the same conduct as the offense that caused the Final Written Warning." Thomas Decl., ¶ 9.

*The Transport Complaint and Investigation*

On January 23, 2012, the President of SGHS received a letter from a patient lodging several complaints about her November 2011 stay in the hospital. Def. Ex. 113. Among other issues, the patient complained about her experience being transported from her room to the X-ray department on November 18, 2011. Id. The letter states:

> Now I need to mention the man who transported me down
> to X-Ray. He was visibly upset that I couldn't walk
> to the bed he had in the hall. I apparently caused
> him to be behind schedule as the ride down was a
> roller coaster, bumping from one wall to the other as
> he rushed. However, as rushed as he was he found time
> to stop and talk to a friend along the way. I was
> shoved into the elevator while they continued their
> conversation. Once we arrived at our floor, my
> transport man ran (literally) with the bed, sliding
> around the corner to X-Ray, nearly smashing into
> another bed with a lady in it. I was dizzy from the
> whirlwind ride. He apparently doesn't know he's
> moving sick people. I think he needs a little re-
> training.

Id.

AO 72A
(Rev. 8/82)

The Manager of Service Excellence at SGHS forwarded this complaint to the various managers of the departments. Thomas Decl., ¶ 6. In 2012, Stephens who replaced Eddy as Director of Facilities Management and was Plaintiff's supervisor at the time of his termination, was one of the managers asked to review the letter and provide some feedback regarding the complaint. Dkt. No. 37 ("Stephens Decl."), ¶ 3; Stephens Dep., 7:12-9:24. To investigate the complaint about the tumultuous transport from the patient's room to the X-ray department, Stephens examined the Patient Transport Log for November 18, 2011. The patient's letter had indicated that she stayed in room 1543. Def. Ex. 113. In the Patient Transport Log, Stephens saw that the transporter from room 1543 to the X-ray department on November 18, 2011, was "Terry."[17] Stephens Decl., ¶ 5.[18] From this information, Stephens was able to determine that Plaintiff was the transporter the patient complained of in her letter. Id. at ¶ 6; Stephens Dep., 11:22-12:1. Stephens says that after examining the transport data, "I compared this complaint to some of my records and some of [Plaintiff's] corrective actions and

[17] In addition to his oft-repeated (and rejected) "hearsay" and "multiple allegations of fact" objections, Plaintiff objects to SGHS' use of the transport log as evidence against Plaintiff because "Mr. Cook's name does not appear in the log." The name "Terry" is plainly written in the "Transporter" column next to the patient's room number and redacted name. Stephens Decl., Ex. B. There is no evidence in the record showing that any other employee in SGHS' transport division went by the forename "Terry."
[18] Stephens says he was also able to tell who the transporter for this patient was because he knew the patient's name, and the Transport Log also lists this patient's name next to room number 1543. However, Stephens cannot divulge the patient's name due to HIPAA.

found his general performance and attitude to be consistent with what the letter stated." Stephens Dep., 14:22-15:1. Stephens did not talk to the patient about the complaint, and he does not recall if he talked to Plaintiff about it. Id. at 15:2-5. Because of Plaintiff's prior corrective actions and the fact that he was currently on a final written warning, Stephens says he felt that recommending Plaintiff's termination "was the right thing to do and it was consistent with his performance." Id. at 19:25-20:7.

The patient complaint also implicated two other SGHS employees: Jewel Thorpe, a 51 year old African-American woman, and Jennifer Watkins, a 31 year old white woman. Def. Ex. 113, Thomas Decl., ¶ 11.[19] Neither of these women were disciplined as a result of the complaint, Thomas says, because neither had any history of customer complaints or inappropriate behavior. Thomas Dep., 29:8-12.

**The Decision to Terminate Plaintiff**

---

[19] In addition to his rejected objection that SGHS' 56.1 Statement of Facts inappropriately includes these employees' ages with "multiple allegations of fact," Plaintiff objects to these ages being considered for summary judgment purposes because "the statement regarding Ms. Thorpe's age is not consistent with Angyln [sic] Thomas' deposition." Pl.'s 56.1 Statement, ¶ 149. As an initial matter, Plaintiff's objection is inadequate because it is not supported with any citations to the record. Furthermore, Plaintiff is simply wrong. Thomas deposed that she did not know Ms. Thorpe's age. Thomas Dep., 30:16-17. She later declared that a "review of the personnel records in my department indicates that, as of the time of Mr. Cook's termination, Ms. Thorpe was 51 years of age." Thomas Decl., ¶ 11. The statements are perfectly consistent.

On January 23, 2012, Stephens met with the leaders of the nursing department to discuss the strengths and weaknesses of the transport department. Id. at 25:22-26:4. Those present at the meeting informed Stephens that "one of their biggest issues was Terry Cook and that he was always on the cell phone, he was always distracted, that he had a bad attitude and [was] easily distracted." Id. Stephens had a similar meeting with the radiology department on January 25, and Stephens's notes reflect that those present at that meeting told him "Terry Cook has a horrible attitude and at times he would push a stretcher into the radiology department and walk off while it was still moving." Id. at 27:10-28:3; Def. Ex. 112.

In light of these meetings and the patient complaint, Stephens consulted with his chain of supervision regarding his recommendation to terminate plaintiff. Stephens Dep., 19:14-18, 22:10-25; Thomas Decl., ¶ 5. Stephens's supervisors agreed, and he then took this recommendation to Human Resources Generalist Thomas. Thomas Decl., ¶¶ 4-5. Thomas met with Charlotte Lyda, the Director of Human Resources, and Dr. Patrick Ebri ("Dr. Ebri"), the Vice President of Human Resources, to discuss the recommendation. Id. at ¶¶ 3, 8. Dr. Ebri, who is African-American, made the ultimate decision to terminate Plaintiff. Id.

On January 30, 2012, Plaintiff was given a termination notice. Def. Ex. 114. The notice references two of Plaintiff's

previous corrective actions, including the Final Written Warning and a prior verbal warning, the patient complaint, and Stephens's meetings with the nursing and radiology departments. Id.[20] Plaintiff refused to sign the statement. Id.; Pl. Dep., 239:10-20.

## Post-Termination Proceedings

Plaintiff initiated Equal Employment Opportunity Commission (EEOC) proceedings on June 28, 2012. Def. Ex. 124. In the EEOC intake questionnaire, Plaintiff alleges that he was the only SGHS employee fired as a result of the patient complaint. Id. He further claims that his termination was discriminatory because other SGHS employees were named in the complaint and Plaintiff "was the oldest and the only person of color,"[21] and that SGHS "has also terminated several other older and/or black employees." Id.

### PROCEDURAL BACKGROUND

---

[20] Plaintiff objects to the contents of the termination notice on the grounds that the Georgia Department of Labor, at Plaintiff's subsequent unemployment benefits hearing, determined that SGHS had not met the burden of proof in showing that Plaintiff was at fault in the termination. See Pl.'s 56.1 Statement, ¶ 155; Dkt. No. 42, p. 2. To the extent Plaintiff is making a collateral estoppel argument or is otherwise attempting to create a material question of fact surrounding the circumstances of Plaintiff's termination, those arguments fail as a matter of law. See, e.g., Ellis v. England, 432 F.3d 1321, 1326 (11th Cir. 2005) (explaining that an agency decision does not have a binding effect on the district court's proceedings.)
[21] Although Plaintiff alleges, without elaboration, that he was the only person of color named in the patient complaint, all other evidence shows that Thorpe was African-American. Nevertheless, for the purposes of this Motion, the Court will ignore all evidence to the contrary and accept Plaintiff's allegation that Thorpe is not African-American.

On October 16, 2013, Plaintiff filed suit in this Court against SGHS. (Dkt. No. 1). He seeks relief for the following claims: (1) racial discrimination pursuant to Title VII; (2) age discrimination; (3) and a hostile work environment. Plaintiff also seeks punitive damages not less than $250,000 and an award of attorney's fees. Now pending before the Court is SGHS' Motion for Summary Judgment (Dkt. No. 29), Plaintiff's Response in Opposition thereto (Dkt. No. 42), and SGHS' Reply (Dkt. No. 45).

## LEGAL STANDARD

Summary judgment is required where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A dispute over such a fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. In making this determination, the court is to view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Johnson v. Booker T. Washington Broad. Serv., Inc., 234 F.3d 501, 507 (11th Cir. 2000).

AO 72A
(Rev. 8/82)

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To satisfy this burden, the movant must show the court that there is an absence of evidence to support the nonmoving party's case. Id. at 325. If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. Anderson, 477 U.S. at 257. The nonmovant may satisfy this burden in two ways: First, the nonmovant "may show that the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion, which was 'overlooked or ignored' by the moving party, who has thus failed to meet the initial burden of showing an absence of evidence." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993) (quoting Celotex, 477 U.S. at 332 (Brennan, J., dissenting)). Second, the nonmovant "may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1117. Where the nonmovant attempts to carry this burden instead with nothing more "than a repetition of his conclusional allegations, summary judgment for the defendants [is] not only proper but required." Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981).

## DISCUSSION

Plaintiff alleges that SGHS' proffered reasons for terminating him—his lengthy disciplinary history culminating in the jarring patient transport—are "false" reasons. Compl., ¶ 6. The true reasons, Plaintiff alleges, are SGHS' "racial hostility" and its "desire to eliminate older employees." Id. at ¶ 7. Plaintiff also claims that SGHS "allowed a hostile work environment to exist, thereby evidencing SGHS' approval of such conduct." Id. at ¶ 8. Plaintiff brings these claims pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq., and, presumably, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq.

## I. Plaintiff Failed to Establish a Race Discrimination Case under Title VII

To prove intentional discrimination, a plaintiff may offer direct evidence, circumstantial evidence, or statistical proof. Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1264 (11th Cir. 2010). "Direct evidence is evidence which, if believed, proves the existence of a fact without inference or presumption." Scott v. Suncoast Beverage Sales, Ltd., 295 F.3d 1223, 1227 (11th Cir. 2002). Here, Plaintiff's only proffered evidence of discriminatory intent is his contention that he, as an older African-American, was fired as a result of a patient complaint where other employees mentioned in the complaint were not. This type of evidence is neither statistical nor direct—

AO 72A
(Rev. 8/82)

Plaintiff must therefore prove his Title VII race discrimination claims with circumstantial evidence.

The Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), established a three-part inferential analysis for discrimination claims based on circumstantial evidence. "Under this framework, the plaintiff first has the burden of establishing a *prima facie* case of discrimination, which creates a rebuttable presumption that the employer acted illegally." <u>Combs v. Plantation Patterns</u>, 106 F.3d 1519, 1528-29(11th Cir. 1997). To establish a *prima facie* case of disparate treatment in a race discrimination case, a plaintiff must show: "(1) he belongs to a racial minority; (2) he was subjected to [an] adverse job action; (3) his employer treated similarly situated employees outside his racial classification more favorably; and (4) he was qualified to do the job." <u>Holifield v. Reno</u>, 115 F.3d 1555, 1562 (11th Cir. 1997).

On the basis of the undisputed facts, Plaintiff has failed to satisfy the requirements for a *prima facie* case of employment discrimination. Although Plaintiff is a member of a protected class, and he suffered an adverse employment decision, he cannot adduce a sufficient comparator from the record. To qualify as a comparator, a plaintiff must point to non-minority employees, who are similarly situated in all relevant aspects. See <u>id</u>. A court considers "whether the employees are involved in or

AO 72A
(Rev. 8/82)

accused of the same or similar conduct and are disciplined in different ways. Id. (citing Williams v. Ford Motor Co., 14 F.3d 1305, 1309 (8th Cir. 1994).

Plaintiff has not named a single comparator who is "similarly situated" to himself. See, id. Plaintiff points to the other two employees mentioned in the patient complaint (but who were not ultimately fired) as comparators. The patient who complained of Plaintiff's conduct alleged: that he was rude to her; that he stopped to chat with other employees when he transported her; and that he transported her in a hurried, jarring, and unsafe manner. Def. Ex. 113. At the time of the misconduct, Plaintiff was already on a Final Written Notice for misconduct, and he had a lengthy and detailed disciplinary history at SGHS for a myriad of infractions. Def. Ex. 109; Pl. Dep., 227:7–228:16; Stephens Dep., 19:25–20:7. The undisputed evidence states that neither of these other two employees were disciplined as a result of the patient complaint because they "did not have any pattern of customer complaints or inappropriate behavior." Dkt. No. 29 ("Thomas Dep."), 29:8-12; see also Moore, 137 Fed. Appx. at 239 (where plaintiff-appellant was found guilty of five separate regulatory violations and his alleged comparator was only disciplined for a single violation, the court declined to find that the two men were "similarly situated."). Plaintiff has proffered no evidence suggesting

AO 72A
(Rev. 8/82)

that the other two employees involved in the patient complaint were, like Plaintiff, on a Final Written Warning or had remotely similar histories of misconduct.

Additionally, Plaintiff appears to suggest the existence of other comparators for purposes of this claim. However, he limited his suggestion to sweeping, broad allegations lacking any factual specificity. For example, in his response to SGHS' motion for summary judgment, Plaintiff states, "White employees were treated more favorably [than Plaintiff] under similar circumstances." Dkt. No. 42, p. 2. In his affidavit, Plaintiff states that SGHS "has also eliminated black employees and replaced them with white employees." Pl. Aff., ¶ 5. Given that plaintiff failed to support his contention of a similarly situated employee with evidence in the record, and that he failed to address the McDonnell Douglas factors in his Response, "*summary judgment is appropriate where no other evidence of discrimination is present.*" Holifield, 115 F.3d at 1562 (emphasis in original).

Notwithstanding the above, the Eleventh Circuit allows a Plaintiff to survive summary judgment "if he presents circumstantial evidence that creates a triable issue regarding the employer's discriminatory intent." Smith v. Lockheed-Martin Corp., 644 F.3d 1321, 1328 (11th Cir. 2011); see also Holifield, 115 F.3d at 1562. Even if Plaintiff were able to establish a

AO 72A
(Rev. 8/82)

*prima facie* case, summary judgment for the defendant would still be proper because plaintiff failed to present sufficient evidence of pretext.

Here, SGHS cites Plaintiff's numerous disciplinary infractions as the reason for his termination. Between 1985 and 2011, Plaintiff received twenty-five disciplinary infraction reports from SGHS for a variety of reasons including, excessive tardiness, patient safety, rudeness, verbally abusive conduct and sexual harassment. See, supra, notes 11-16. Eddy (prior to the end of his tenure at SGHS), after reviewing Plaintiff's file, issued a Final Written Warning, admonishing Plaintiff that should he incur one more infraction during the year that the Final Written Warning was in place, Plaintiff would be terminated. Pl. Dep., 214:7-215:16; Def. Ex. 105; see also Thomas Decl., ¶ 9 (explaining that "A termination action is appropriate when there is a Final Written Warning in [an] employee's file within the preceding 12-month period. The *offense that precipitates the termination does not have to be for the same conduct* as the offense that caused the Final Written Warning.")(emphasis added). Although Plaintiff disputed the institution of this 'probation period,' on June 27, 2011, Eddy sent a Memorandum to Plaintiff, upholding the institution of the Final Written Warning. Def. Ex. 109; Pl. Dep., 227:1-228:16. Six months later, on January 23, 2012, Plaintiff

AO 72A
(Rev. 8/82)

incurred yet another offense—the "whirlwind ride." Stephens Dep., 11:22-12:1. The ride was the straw that broke the camel's back—Stephens recommended Plaintiff's Termination shortly thereafter. Stephens Dep., 19:25-20:7; Def. Ex. 114. With regard to Plaintiff's termination, SGHS specifically cites two prior corrective actions (including the Final Written Warning and a prior verbal warning), the patient complaint, and Stephens' meetings with the nursing and radiology departments as the basis for his termination. Def. Ex. 114.

Given that SGHS has articulated "legitimate" reasons regarding Plaintiff's termination, the burden shifts back to the Plaintiff to prove that SGHS' proffered reasons were pretextual. Holifield, 115 F.3d at 1565. "The inquiry into pretext centers upon the employer's belief, and not the employee's own perceptions of his performance." Holifield, 115 F.3d at 1565. "The plaintiff must demonstrate weaknesses or implausibilities in the employer's proffered reasons for its action sufficient for a reasonable factfinder to disbelieve the reasons." Rioux v. City of Atlanta, 520 F.3d 1269, 1278 (11th Cir. 2008)(citing Silvera v. Orange Cty. Sch. Bd., 244 F.3d 1253, 1258 (11th Cir. 2001)). "It is the plaintiff's burden not merely to raise a suspicion regarding an improper motive, but rather to demonstrate there is a genuine issue of material fact that the employer's proffered reason for his demotion was pretextual."

Chapman v. AI Transp., 229 F.3d 1012, 1024-25 (11th Cir. 2000).
The Court is not "in the business of adjudging whether
employment decisions are prudent or fair." Damon v. Fleming
Supermarkets of Fla., Inc., 196 F.3d 1354, 1360-61 (11th Cir.
1999). Instead, courts focus attention on "whether unlawful
discriminatory animus motivates a challenged employment
decision." Id. The Eleventh Circuit noted that "[c]onclusory
allegations of discrimination, without more, are not sufficient
to raise an inference of pretext or intentional discrimination
where [an employer] has offered . . . extensive evidence of
legitimate, non-discriminatory reasons for its action." Carter
v. Miami, 870 F.2d 578, 585 (11th Cir. 1989).

Here, SGHS specifically cites to the following as the basis
for his termination: the Final Written Warning and a prior
verbal warning, the patient complaint, and Stephens's meetings
with the nursing and radiology departments. Def. Ex. 114.
Although no one involved in the decision to terminate Plaintiff
actually saw the "whirlwind ride" occur, other members of the
SGHS staff directly observed other actions of the Plaintiff—
particularly his consistent tardiness (47 times) and his poor
attitude. Def. Ex. 105. Stephens, pieced together hospital
records, and determined that Plaintiff was responsible for the
complaint regarding the "whirlwind ride." Stephens Dep., 11:22-
12:1. Stephens, following subsequent meetings with the leaders

AO 72A
(Rev. 8/82)

of the Transport Department, who had personal knowledge of Plaintiff's numerous infractions, and on the basis of Plaintiff's history of infractions, recommended Plaintiff's termination. Stephens Dep., 19:14-18, 22:10-25; Thomas Decl., ¶ 5. Several hospital leaders convened to discuss the matter of Plaintiff's employment, including Charlotte Lyda, the Director of Human Resources, and Dr. Ebri. Dr. Ebri relied on all of the aforementioned information when he ultimately decided to terminate Plaintiff. Thomas Decl., ¶¶ 3, 8.

Although Plaintiff, in his affidavit, states that he did not commit the alleged infraction, Pl. Aff., ¶ 2, this denial is insufficient to prove that SGHS' acts were pretextual. See Smith v. Papp Clinic, P.A., 808 F.2d 1449, 1452-53 (11th Cir. 1987)("[I]f the employer fired an employee because it honestly believed that the employee had violated a company policy, even if it was mistaken in such belief, the discharge is not 'because of race'"); see also Sweeney v. Ala. Alcoholic Beverage Control Bd., 117 F. Supp. 2d 1266, 1274 (M.D. Ala. 2000) (explaining that where the employer conducted an independent inquiry into the alleged misconduct by the Plaintiff and where the Court acknowledged Plaintiff's affidavit, including her denial that the infraction occurred, the Court failed to find evidence of pretext). The Record is devoid of evidence showing a pretextual reason for Plaintiff's termination. Given that Plaintiff failed

AO 72A
(Rev. 8/82)

to offer a similarly situated comparator, failed to offer evidence of discriminatory intent on the part of SGHS, and failed to offer evidence of pretext, summary judgment is appropriate on Plaintiff's Title VII employment discrimination claim.

## II. Plaintiff Failed to Establish a *Prima Facie* Age Discrimination Case Under the ADEA

Similar to the analysis set forth above, a plaintiff can establish a *prima facie* case of age discrimination either by presenting direct evidence of discrimination or satisfying a variation of the McDonnell Douglas test for circumstantial evidence. Damon, 196 F.3d at 1358. If the plaintiff establishes his *prima facie* case, as in the race discrimination context, the burden then shifts to the employer to show that it had a legitimate, nondiscriminatory reason for its decision to terminate the plaintiff. Turlington v. Atlanta Gas Light Co., 135 F.3d 1428, 1432 (11th Cir. 1998). The plaintiff must then show that the employer's articulated nondiscriminatory reason was merely a pretext for unlawful discrimination. Id. While the burden to prove discrimination or to establish a nondiscriminatory basis for the employment action may shift from plaintiff to defendant, "the plaintiff retains the burden of persuasion to establish that age was the 'but-for' cause of the

AO 72A
(Rev. 8/82)

employer's adverse action." <u>Gross v. FBL Fin. Servs., Inc.</u>, 557
U.S. 167, 177 (2009).

As with his race discrimination claim, Plaintiff relies on
circumstantial evidence to establish his age discrimination
claim. The four part *prima facie* test for age discrimination
claims requires the plaintiff to show that he: (1) was a member
of the protected group of persons between the ages of forty and
seventy; (2) was subject to an adverse employment action; (3)
was replaced by a younger individual or was otherwise treated
less favorably than non-protected class members under similar
circumstances, and (4) was qualified to do the job. <u>Turlington</u>,
135 F.3d at 1432. There is no indication in the record that
Plaintiff was replaced by a younger individual, and he makes no
such claim. Thus, to establish his *prima facie* case, Plaintiff
will have to show, in part, that he was treated less favorably
than similarly situated individuals who were not within the
class of older employees. <u>Sims v. MVM, Inc.</u>, 704 F.3d 1327,
1333 (11th Cir. 2013).

As to his age discrimination claim, Plaintiff names or
points to three potential comparators. The first two are,
again, Jewel Thorpe and Jennifer Watkins, who were both
implicated in the patient complaint but were not disciplined for
their conduct like Plaintiff was. At the time of his
termination, Plaintiff was 54, Thorpe was 51, and Watkins was

AO 72A
(Rev. 8/82)

31.   Thorpe and Watkins are not adequate comparators for the
purposes of Plaintiff's ADEA claim for the same reasons that
they were not adequate comparators for his Title VII race claim:
they had different supervisors, different positions, different
disciplinary histories, and different conduct.   See Maniccia v.
Brown, 171 F.3d 1364, 1368-69 (11th Cir. 1999) (explaining that
"employees who have committed multiple policy violations are not
similarly situated to employees who committed only one such
violation.").   The only similarity between Plaintiff and these
other two employees is that they were all implicated in the same
patient complaint.   Watkins and Thorpe, then, are not adequate
comparators for Plaintiff's ADEA claim.

In his affidavit, Plaintiff also names as a comparator,
Robert Eddy, "who was in excess of 60 years of age, [and] was
replaced by someone who was less than 40 years of age."   Pl.
Aff., ¶ 5.   Plaintiff suggests that this is evidence that the
"Hospital has engaged in an ongoing practice of terminating
older employees and replacing those employees with young
people."   Id.   There are several problems with Plaintiff's
argument.

Plaintiff's statement that Eddy was replaced by someone
under 40 is conclusory.   Conclusory allegations lacking specific
supporting facts have no probative value, and Plaintiff's
statements will not create a triable issue of fact regarding

AO 72A
(Rev. 8/82)

Eddy and his replacement. See Heterington v. Wal-Mart, Inc., 511 F. App'x 909, 911 (11th Cir. 2013) (citing Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1228 (11th Cir. 1999)). At best, this vague anecdote serves to show that there was, at one time, at least one individual working in a hospital who was replaced by a younger person.

But while the Eleventh Circuit allows a plaintiff to defeat summary judgment with circumstantial evidence where the McDonnell Douglas framework fails for lack of comparators, a triable issue concerning the employer's discriminatory intent will still only exist where "the record, viewed in a light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." Sims, 704 F.3d at 1333. Plaintiff's conclusory statement about Eddy and his replacement is not a "convincing mosaic of circumstantial evidence." It hardly amounts to a single tile, let alone a mosaic. Even if the Court considered Eddy's situation, Plaintiff still would not have carried his burden to create a triable issue of fact as to SGHS' intent to discriminate against him because of his age. Thus, summary judgment is appropriate as to Plaintiff's ADEA claim.

**III. Plaintiff's Hostile Work Environment Claim Fails**

AO 72A
(Rev. 8/82)

A plaintiff proves a hostile work environment claim under Title VII by showing that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). The plaintiff must show that: (1) he belongs to a protected group; (2) he has been subject to unwelcome harassment; (3) the harassment was based on a protected characteristic, such as religion or sex; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) the employer is responsible for such environment under either a theory of vicarious or direct liability. Reeves v. C.H. Robinson Worldwide, Inc., 594 F.3d 798, 808 (11th Cir. 2010); see also 42 U.S.C. § 2000e-16(a).

Plaintiff never affirmatively states who caused the alleged hostile work environment or the nature of the harassment. See, e.g., Compl., pp. 1-5; Dkt. No. 42, pp. 1-7; Pl.'s Aff., pp. 1-3. But after considering the record, the best the Court can glean is that the alleged harasser in question is Trahan, a dispatcher and coworker of Plaintiff's. According to Plaintiff, Trahan made comments to Plaintiff such as "you people," "get the

AO 72A
(Rev. 8/82)

hell out of here," and "kiss [my] rear end." Pl. Dep., 293:21-
23, 294:12, 296:25-297:12. Trahan's comments thus satisfy the
first four elements necessary to prove a hostile work
environment claim, if the Court infers that "you people" has a
racial connotation. It is undisputed that Plaintiff, an
African-American man, is a member of the protected class, here,
the African-American community. It is also undisputed that
Trahan created an unwelcoming and unpleasant working environment
by making disparaging comments about African-Americans in
Plaintiff's presence. Pl. Dep., 293:21-23, 294:12, 296:25-
297:12. Proving the fifth element, however, is where
Plaintiff's hostile work environment claim fails as a matter of
law.

"The fifth element requires a plaintiff to prove that the
employer is responsible for the hostile work environment because
of actions taken by either a supervisor or a coworker." Adams
v. Austal, U.S.A., LLC, 754 F.3d 1240, 1249 (11th Cir. 2014).
"When a plaintiff alleges that her employer is liable for the
harassing conduct of co-workers instead of supervisors, the
employer will be held liable only if it 'knew or should have
known of the harassing conduct but failed to take prompt
remedial action.'" Baldwin v. Blue Cross/Blue Shield of Ala.,
480 F.3d 1287, 1302 (11th Cir. 2007) (quoting Miller, 277 F.3d
at 1278)). If the employer knows of harassment in its workplace

AO 72A
(Rev. 8/82)

but takes immediate and appropriate action, the employer is not liable for the harassment. Watson v. Blue Circle, Inc., 324 F.3d 1252, 1261 (11th Cir. 2003) (citing Miller, 277 F.3d at 1280; Fleming v. Boeing Co., 120 F.3d 242, 246, n.4 (11th Cir. 1997)).

Plaintiff admits that Trahan was disciplined for some of her comments, but notes that she was never fired. Pl. Dep., 296:7-10. Thomas, however, declared that Trahan was disciplined for her foul language. Thomas Decl., ¶ 12. Thus, while Trahan may not have received the punishment Plaintiff would have chosen for her, she was nevertheless punished. See Dinkins v. Charoen Pokphand U.S.A., Inc., 133 F. Supp. 2d 1237, 1253 (M.D. Ala. 2001) ("These remedial measures need not be those that the employee requests or prefers, as long as they are effective."). Stephens, who became Trahan's manager in 2012, stated that he is not aware of any complaints regarding Trahan since he became her manager. Stephens Dep., 7:12-9:4, 21:9-17. As far as the record is concerned, Trahan was appropriately disciplined for her demeaning language and that discipline put an end to the problem. Plaintiff has not pointed to any evidence in the record to the contrary.

Even assuming Plaintiff's hostile work environment claim completely satisfied the first four requirements, Plaintiff failed to establish that SGHS did not adequately discipline and

address the hostile remarks made by a coworker. Summary
judgment is thus appropriate as to Plaintiff's hostile work
environment claim.

## CONCLUSION

Plaintiff failed to put forth any evidence that would
create a material issue of fact as to either SGHS' intent to
discriminate against Plaintiff because of his race and age or
SGHS' tolerance of a hostile work environment. SGHS' Motion for
Summary Judgment (Dkt. No. 29) is **GRANTED** in its entirety. The
Clerk of Court is directed to enter the appropriate judgment.

**SO ORDERED**, this 30TH day of September, 2015.

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)